T. M. Stanton v. Commissioner.
Stanton v. Commissioner
Docket No. 11324.
United States Tax Court
1947 Tax Ct. Memo LEXIS 105; 6 T.C.M. (CCH) 977; T.C.M. (RIA) 47251; August 25, 1947
B. L. Herman, Esq., High Point, N.C., for the petitioner. Elmer M. Corbin, Esq., for the respondent. KERN Memorandum Findings of Fact and Opinion KERN, Judge: The Commissioner determined deficiencies in petitioner's income taxes for the years and in the amounts indicated below, and determined penalties, all as hereinafter set forth: Delin-
quency
50%
Year
Deficiency
Penalty
Penalty
1934 Income Tax
$ 129.25 $ $ 64.63
1935 Income Tax
187.73
10.51
93.87
1936 Income Tax
352.07
176.04
1937 Income Tax
277.31
185.46
1938 Income Tax
508.12
127.03
254.06
1939 Income Tax
440.68
220.34
1940 Income Tax
665.76
166.44
332.88
1941 Income Tax
2,416.76
604.19
1,208.38
1942 Income Tax
7,759.03
3,879.52
1943 Income & Vic-
tory Tax
12,448.65
6,224.33
Totals
$25,185.36
$908.17
$12,639.51
*106 Petitioner was represented at the hearing by counsel, but was not personally present, and no evidence was offered or brief filed on his behalf. Findings of Fact Petitioner is an individual residing in High Point, North Carolina. He filed individual income tax returns with the collector of internal revenue at Greensboro, North Carolina, for the calendar years 1934, 1935, 1936, 1937, 1939, 1942, and 1943. The deficiencies involved herein were determined under date of March 18, 1946. Petitioner is and was during all these years a practicing physician and surgeon at High Point, North Carolina. He maintained an office in a private clinic which had been established by his father, and paid a share of the expenses involved in its operation. His books and records covering the taxable years were not available for inspection by the internal revenue agent, with the exception of a number of cancelled checks covering a period of three or four years. He explained the absence of records by stating that they had been destroyed by mistake by an employee in his office. For greater convenience our other findings of fact are set out in paragraphs relating to each of the taxable years here involved *107 followed by our opinion as to the issues thereby presented. 1934 Findings of Fact Petitioner filed an income tax return for 1934, which reported no net taxable income. The return was not offered in evidence, having been destroyed by the Government. The respondent determined that petitioner received $7,256.84 in 1934, representing his total bank deposits in that year. There is no evidence as to the amount reported as gross income by petitioner in his return, nor as to the deductions claimed by him. The fraud penalty is asserted on the grounds that petitioner understated his income with intent to defraud the Government. No part of the deficiency for 1934 has been shown to be due to petitioner's fraud with intent to evade the payment of tax. Petitioner's return for 1934 was not false or fraudulent with intent to evade tax. Opinion Since there is not even any evidence before us that petitioner did, in fact, understate his income in his return for 1934, the details of his return not being available, the evidence falls far short of that required to sustain respondent's allegation of fraud, and we have therefore concluded that petitioner's return for the taxable year was not false *108 or fraudulent with intent to evade tax. See section 276 (a), Internal Revenue Code. In the absence of proof of such fraud, respondent is prevented by the statute of limitations from assessing any tax for the year 1934. 1935 Findings of Fact Petitioner filed his return for 1935 on March 30, 1936. He had requested and received a ten-day extension of time from March 15, 1936. He reported receipts of $8,064.86, and claimed deductions for business expenses, depreciation, taxes and contributions totalling $4,539. His net taxable income, so computed, was $3,525, and the tax paid was $22.53. During 1935, petitioner deposited $8,064.46 in his bank account. No part of the deficiency for 1935 is due to fraud with intent to evade the payment of tax. Petitioner's return for 1935 was not false or fraudulent with intent to evade tax. Opinion There is no evidence that the deductions claimed by petitioner in his return for 1935 were not ordinary and necessary in character or were excessive in amount. Since petitioner reported gross income in an amount almost exactly equal to that which respondent contends he received, the only basis upon which it could be contended *109 that he understated his net taxable income would be by the disallowance of claimed deductions. In the absence of some evidence to justify such a disallowance it cannot be said petitioner failed to report all his taxable income, much less that he did so with fraudulent intent. The respondent has not met his burden of proof on the fraud issue, and we are therefore unable to find there was fraud in 1935. The statute of limitations therefore prevents the assessment of any tax or penalty for that year. 1936 Findings of Fact On March 15, 1937, petitioner filed his income tax return for 1936. He reported gross receipts of $8,465, claimed deductions for business expenses, depreciation, taxes and contributions of $5,050.50, although he itemized $5,150.50. He failed to take the earned income credit to which he was entitled and paid a tax of $4.12. Had the earned income credit been taken, the return would have reflected no tax due. During 1936 he deposited a total of $9,734.86 in his bank account. There is no evidence whatever of the nature or source of the $1,269.86 deposied by petitioner in excess of the gross taxable receipts reported by petitioner. No part of the deficiency for 1936 *110 is due to fraud with intent to evade the payment of tax. Petitioner's return for 1936 was not false or fraudulent with intent to evade tax. Opinion The charge of fraud made by respondent rests upon his contention that petitioner fraudulently failed to report all of his taxable income. An essential element of the proof required of respondent is to show that the income which petitioner omitted was taxable income. Not all receipts are taxable, and we have before us no evidence at all from which we could infer whether the amount involved here was taxable income, borrowed money (to which there are references in the record) or return of capital. The use of bank deposits is proper in some cases for the determination of deficiencies, in which case the petitioner would have the burden of showing the disputed amount to be non-taxable; or, where there are bank deposits of an unexplained nature repeatedly made over a period of time, or so large in amount as, under the circumstances, to indicate their source and taxable character, evidence thereof may be sufficient to sustain a charge of fraud. Under the facts present here, where the alleged fraud depends entirely on a discrepancy of $1,269.86 *111 between the total amount deposited by petitioner throughout the year and the amount reported by him as gross income, and no evidence is offered to show the source or character of the amount so omitted, we do not feel the respondent's burden of proving fraud has been adequately discharged. The statute of limitations will therefore prevent the assessment of any tax for this year. 1937 Findings of Fact Petitioner filed his return for 1937 on March 30, 1938. He had requested and received an extension of time from March 15, 1938, to March 30, 1938. He reported gross receipts of $10,038.33 and claimed deductions of $6,308.30. He paid a tax of $8.38. He deposited $10,003.33 in his bank account in 1937. No part of the deficiency for 1937 is due to fraud with intent to evade the payment of tax. Opinion There is no evidence whatever that the claimed deductions were in any way invalid. Since petitioner reported gross income slightly in excess of the amount which respondent contends he received, it would be necessary to disallow at least some of the deductions claimed in order to show any understatement of taxable income whatever. Respondent has offered no kind of evidence from which *112 we could say the deductions were to any extent unallowable. There is therefore no evidence of fraud before us, and the statute of limitations prevents the assessment of any tax for this year. 1938 Findings of Fact Petitioner failed to file a return for 1938 and the statute of limitations is therefore not involved. During 1938, petitioner deposited $10,957.03 in his bank account. A part of the deficiency for 1938 was due to fraud with intent to evade the payment of tax. Opinion There is in the record nothing concerning the amount of any deductions to which petitioner might have been and almost certainly was entitled had he chosen to claim them. We cannot assume such deductions would have been sufficiently large that no tax was due. Obviously, he had gross income substantially in excess of his exemptions. It is difficult to find any other motive for a complete and unexplained failure to file a return in such circumstances except a purpose to defraud the Government. We therefore found that some part of the deficiency was due to fraud with intent to evade the payment of tax and the penalty therefor is properly asserted. There being no evidence to overcome the presumption of *113 correctness which attaches to respondent's determination of deficiency, we conclude there was no error therein. Respondent has asserted a delinquency penalty, also, and, no reasonable cause having been shown for the failure to file a return, such penalty is justified. 1939 Findings of Fact The petitioner's return for 1939 was filed March 15, 1940. Petitioner also executed a consent to extending the time within which the tax for 1939 might be assessed to June 30, 1946. He reported total receipts of $7,144.93 and claimed deductions of $4,555.43. His personal exemptions exceeded his net income so computed, and no tax was therefore paid. Petitioner, in 1939, performed 64 operations on patients of his own and 82 on patients referred to him. Only six were described on hospital records as major operations. Most major operations were appendectomies for which the usual surgery fee in High Point was $100. No part of the deficiency for 1939 is due to fraud with intent to evade the payment of tax. Opinion This is the first of the years for which respondent attributed income to petitioner by another method than reliance on his bank deposits. Because of indications that at the time *114 of making some deposits petitioner withdrew some part of the funds in cash, depositing only the remainder, the internal revenue agent abandoned that source of information and secured from the records of a local hospital the number of operations performed by petitioner on his own patients, and on patients referred to him by other physicians for surgery. The hospital records disclosed that there were in 1939 64 of the first and 82 of the latter. The internal revenue agent who was a witness at the hearing herein testified that another internal revenue agent interviewed twenty patients and was advised that fees paid by them ranged from $25 to $300. Based upon these interviews it was determined by respondent's agents that $100 was the average fee for an operation. Respondent computed petitioner's probable income, then, on the basis of $100 for each operation on his own patients, and $50, or half the fee paid, for operations on patients of other doctors. The amount so computed totaled $10,707.50. The director of the hospital testified as a witness for respondent that only six of the operations performed in 1939 by Dr. Stanton were major operations. Another witness of respondent, a physician *115 practicing in High Point, testified that most of the major operations which he had were appendectomies, and that the usual fee for them was $100. Respondent has given no effect to any of petitioner's claimed deductions. So much doubt has been cast, by evidence offered by respondent himself, on the accuracy of the computations used by respondent, the factual basis for which is before us only by hearsay testimony, that we do not consider that respondent has presented such clear and convincing proof of fraud as to justify the imposition of the fraud penalty. The waiver referred to above, however, permits the assessment of the tax, and petitioner having offered no evidence to challenge the correctness of the determination of deficiency, it would necessarily be sustained even in the absence of any evidence adduced by respondent. 1940 Findings of Fact Petitioner failed to file a return for the year 1940. Petitioner performed 85 operations on patients of his own and 53 on patients referred to him. A part of the deficiency for 1940 is due to fraud with intent to evade the payment of tax. Opinion Since petitioner filed no return for this year, there is no limitation on the time within *116 which the assessment of tax may be made. The situation here, then, is similar in all respects to that which obtained in 1938, except that a different method of computation was used by respondent. The evidence that petitioner performed a total of 138 operations in this year seems to lead inescapably to the conclusion that he had, in that year, some taxable net income in excess of his exemptions, even after taking into consideration the evidence that he received only half the total fee for 53 of such operations; and in spite of the tendency of the evidence to cast a doubt upon the correctness of the amount of $100 allocated by respondent to each operation. This latter point, and the fact that petitioner would undoubtedly have been entitled to substantial deductions for expenses, were petitioner's opportunities, literally golden, to show a tax liability reduced below that which we are presently able to define. As the record stands, we are convinced petitioner received some taxable income which he completely failed, without explanation, to report for taxation. We can only conclude his failure to report it was due to fraud with intent to evade the payment of tax, and that some part of *117 the deficiency is attributable thereto. There being no evidence from which we could say respondent's determination of deficiency is in error, although the method of arriving at the amount thereof leaves much to be desired, we must sustain it, together with the penalties determined. 1941 Findings of Fact No return was filed by petitioner for this taxable year. He performed 98 operations on his own patients and 85 on patients referred to him. There is no evidence as to how many were major operations. He also received dividends of $373.50. Some part of the deficiency for 1941 was due to fraud with intent to evade the payment of tax. Opinion The situation with respect to 1941 is in all essential respects like that which obtained in 1940. No return was filed. Petitioner performed 183 operations, for 85 of which he received only one-half the fee paid. These are almost the only facts in the record. But they seem to be sufficient to establish that petitioner did receive some taxable income. His failure to report any for taxation must be attributed to fraud with intent to evade the payment of tax. As we have indicated heretofore, there is some evidence on the record, placed there *118 by respondent himself, which tends to question the accuracy and fairness of the method of computation employed by respondent, with the result that we have been unwilling to sustain a charge of fraud based solely upon a variance between the amount reported by petitioner and that computed by respondent. But petitioner's failure to report any income at all, under circumstances which indicate clearly and undisputably that he received some taxable income, is sufficient, we think to sustain the charge of fraud. Despite the doubts cast upon the respondent's computations, it is impossible to say from the evidence which inspired those doubts, or any other evidence in the record, that petitioner received any specific amount less than that determined by respondent. The deficiency must therefore be approved as determined, and the ad valorem penalties must necessarily be applied to the entire amount thereof. 1942 Findings of Fact Petitioner filed his return for 1942 on March 14, 1943. He reported gross receipts of $8,044.12, and claimed deductions for business expenses and contributions totalling $5,725.80. He reported income subject to tax, after credit for dependents, of $536.49 and paid *119 a tax of $132.07. Petitioner had patients numbering 144 of his own and 166 referred to him for operation. He also received dividends of $332. No part of the deficiency for 1942 is due to fraud with intent to evade payment of tax. Petitioner's return for 1942 was not false or fraudulent with intent to evade tax. Opinion On the same basis outlined above, respondent determined petitioner had income of $20,381.68 from the operations performed by him. Allowing no deductions, the deficiency is based on that amount, and the charge of fraud rests upon the alleged failure of petitioner to report the difference between the amount reported by him and the amount so determined. There is no evidence that the deductions were fraudulently claimed. As we have indicated heretofore, the accuracy of respondent's calculations of petitioner's gross income has been brought into question by oral evidence offered by him to such an extent that, while the deficiencies based thereon may be sustained for lack of evidence to impugn them, the evidence of respondent as to the amount of petitioner's gross receipts is not, in our opinion, so clear and convincing as to sustain a charge of fraud based on no other *120 evidence or contention. We therefore hold that petitioner's return for 1942 was not false or fraudulent with intent to evade tax. Since the deficiency notice was not issued until March 18, 1946, the assessment of the tax is prevented unless we apply Sec. 275 (c), which provides for assessment within five years, where taxpayer omits from gross income an amount properly includible therein which is in excess of 25% of the amount of gross income stated in the return. It therefore becomes necessary to determine whether petitioner did omit such an amount from his gross income. In view of the complete failure of petitioner to present evidence, and of the inadequacy, in many respects, of that which was offered by respondent, the resolution of this question, like the others which we have had to consider, depends largely on where the burden of proof lies. We have held that the Commissioner has the burden of proving the omission described by the statute. See C. A. Reis, 1 T.C. 9; aff'd. 142 Fed. (2d) 900, and cases there cited. In that case we pointed out that the determination of deficiency is not to be considered as evidence or a substitute for evidence. Therefore, *121 respondent's determination that petitioner received $20,381.68 in 1942 is not evidence that he did so, for the purpose of resolving any issue on which the respondent has the burden of proof, even though, as we have seen, the determination of deficiency must be approved for lack of evidence where the petitioner has the burden of disproving it. The precise question here, then, is whether there is any evidence before us from which we can determine that petitioner omitted from gross income an amount equal to 25 percent thereof which was properly includible therein. If there is any evidence it is a preponderance, petitioner having offered none. There is evidence that petitioner performed operations on 144 patients of his own and on 166 patients referred to him; that on patients referred to him, he received half of the total fee; and that the usual fee for major operations was $100 to $150, with appendectomies, which constitute most of the cases, usually $100. That six of the 146 operations performed in 1939 by Dr. Stanton were major operations is no evidence of how many of the 1942 operations were major, or what an average fee for minor operations might have been Petitioner reported gross *122 income of $8,044.12. In order to invoke the exception to the statute of limitations provided for by Sec. 275 (c) of the Code, we must have evidence that petitioner received at least $2,011.03 which he omitted from his return. It seems to us to be impossible on the evidence before us, lacking as it does any hint of certain facts vital to any such computation, to say that petitioner's gross income for the year was 25 percent more than the amount reported by him. Because of this failure of proof, the exceptional provisions contained in Sec. 275 (c) cannot be availed of by respondent to bring the notice of deficiency within the period of limitations and the assessment of tax for 1942 is therefore barred. 1943 Findings of Fact Petitioner filed his return for 1943 on March 15, 1944. He reported gross receipts of $9,639.37, claimed deductions for business expenses of $5,546.28, depreciation totalling $900 on his car and office equipment, and contributions of $175. In 1943 petitioner had 199 patients of his own and 198 referred to him. He received dividends of $373.50. No part of the deficiency for 1943 is due to fraud with intent to evade the payment of tax. Opinion On the basis *123 heretofore described, respondent determined petitioner's income to be $25,889.37. He allowed no deductions. As we have held with respect to other years, we do not consider the evidence sufficiently clear and convincing that petitioner actually received income in the amount so determined to sustain a charge of fraud based on mere understatement of income, the proof of which is the burden of the respondent. However, there is no question here of the intervention of the statute of limitations, and, in the absence of any evidence at all, we must give effect to the presumption of correctness which attaches to the respondent's determination. Therefore we hold that respondent did not err in his determination of deficiency in tax for this year but that he erred as to the penalty determined. In connection with our discussion of petitioner's tax liability for 1943, we consider it pertinent to comment on the fact that his return for that year is almost a comedy of errors of computation. In computing the petitioner's tax liability, his attorney, who prepared this return, and represented him at the hearing herein, deducted the claimed depreciation allowances and contributions from the total of *124 the business expenses claimed, instead of adding them, resulting in a substantial disadvantage to petitioner by way of understating deductions. Then, instead of subtracting the total deductions from gross receipts, to arrive at his net income, the figure entered as "total net income" is in fact the figure representing the total of the business expense deductions minus the depreciation claimed, and the figure entered as "taxable net income" is in fact the result of subtracting from total business expenses, minus depreciation, the total of deductions claimed on account of taxes, interest and contributions. This is the figure upon which petitioner's tax liability was apparently computed and the tax paid, although it bears no intelligible relation to his actual net income. The earned income credit claimed was less than petitioner was entitled to. All of these errors resulted in the payment of a substantially greater tax than petitioner would have been subject to had the basic figures been correct. In our opinion this proves not so much fraud on the part of petitioner as the obvious inefficiency of his tax consultant. We have kept in mind in considering the issues involving fraud that *125 respondent is required to establish fraud, not beyond a reasonable doubt, but by clear and convincing evidence. A. W. Mellon, 36 B.T.A. 977. That burden rests upon the respondent, whether petitioner is present or not, and whether he offers any testimony. Miller-Pocahontas Coal Co., 21 B.T.A. 1360, Ollie V. Keisler, 39 B.T.A. 646. Decision will be entered under Rule 50.